Dear Mr. Curole:
You have requested an opinion from this Office regarding ownership issues related to dredge material. Specifically, you have asked whether the State of Louisiana owns dredge material removed from water bottoms within the State and how those materials may be used to support coastal restoration efforts.
As to the first part of your request — the ownership of dredge material — that matter was largely resolved by La. Atty. Gen. Op. No. 05-0222. That opinion considered sand and gravel dredged from the State's water bottoms to fall into the category of "other mineral" under La.R.S. 30:209. As with any other mineral deriving from State lands — of which there is no question that the State has an interest — these "other minerals" that come from dredging activities must also be owned by the State.[1] Accordingly, it is axiomatic that sand and gravel dredged from State water bottoms does have intrinsic value and, due to the prohibitions against donations embodied in La.Const. Art. VII, Sec. 14(A), such materials cannot be given away without adequate compensation.[2]
Based upon the State's ownership of such dredge materials, as was noted in La. Atty. Gen. Op. No. 05-0222, if the Corps of Engineers ("the Corps"), [3] or another *Page 2 
federal agency, is not the party undertaking the dredging, and such dredging is not being undertaken for the purpose of facilitating navigation, it is our opinion that the State has great latitude in the control of the disposition of the dredge material. As noted above, the water bottom and the dredge material from navigable waterways belong to the State. Thus, if the State dredges instead of the Corps, the Corps cannot dictate what the State can and cannot do with its own mineral. The Corps' sole purpose for dredging is to facilitate navigability and as long as non-Corps projects do not impede such navigability, the Corps and other federal agencies have no control over the State's water bottoms or its minerals, as such does not implicate the navigability of a channel. Regardless, it is our opinion that the dredge from State water bottoms is the State's wholly owned resource.
You also ask whether the State can control the use of dredge material obtained from navigable water bottoms or ports. It is apparent from this question that you are referring to whether the State can require the federal government to take the dredged materials from our navigable waterways, ports, and harbors, and use it to help in the efforts to rebuild our vanishing coast. As you know, this practice, known as beneficial use, has been a matter of much debate in the scientific, environmental, and governmental communities for some years now.[4] It is the opinion of this Office that Louisiana can mandate that the Corps put the dredged materials to a beneficial use through authority granted to the State by Congress in the Coastal Zone Management Act ("CZMA"). The CZMA[5] — a federal law that is locally administered by the Louisiana Department of Natural Resources[6] provides clear authority for the State to make beneficial use a precondition to certain administrative actions.
The primary objective of the CZMA is to "preserve, protect, develop, and where possible, to restore or enhance, the resources of the Nation's coastal zone for this and succeeding generations."[7] Congress recognized that there was a "national interest in the effective management, beneficial use, protection, and development of the coastal zone" due to the great demands on our coasts for food, energy, defense, recreation, transportation, and other industrial activities.[8] In an effort to facilitate coastal preservation, Congress concluded that the most effective management of the coastal zone could be achieved by cooperation among federal, state, and local authorities. Therefore, one of the main thrusts of *Page 3 
the CZMA is to coordinate the efforts of individual states and local communities with those of the federal government.[9]
In furtherance of achieving this goal, any coastal state is eligible to submit a coastal management plan ("CMP") for federal approval. To be federally approved the CMP must be a comprehensive statement that lays out the objectives, policies, and standards for the use of private and public lands in the coastal zone and complies with all CZMA requirements.[10] Once the CMP is approved, the state may receive federal assistance and assume the authorities granted to the states under the CZMA.[11] In 1980, Louisiana's CMP, called the Louisiana Coastal Resources Program ("LCRP"), was federally approved.[12]
One mechanism for cooperation between state and federal governments is the federal consistency provision of the CZMA.[13] The CZMA allows states with federally approved CMPs to require that federal agency activities in the coastal zone be consistent to the maximum extent practicable with the state CMP.[14] Federal regulations define "maximum extent practicable" as "fully consistent with the enforceable policies of management programs unless full consistency is prohibited by existing law applicable to the Federal agency."[15]
It is within the consistency provision of the CZMA that the State of Louisiana, via the Department of Natural Resources (the administrator of the LCRP) finds its voice with respect to telling the federal government that it must beneficially use dredged material. The State, in order to grant consistency on federal projects in the Louisiana coastal zone, should require the beneficial use of dredged materials to restore Louisiana's ailing coast. Indeed, there are at least two provisions of the LCRP that would render a proposed federal action inconsistent with Louisiana's CMP if dredged material was not beneficially used.[16] *Page 4 
Dredge material from Louisiana water bodies is currently disposed of by entities such as the Corps by either returning the material to the water column downstream of the dredging operations or by shipping the material to Ocean Dredged Material Disposal Sites ("ODMDS") in the deep waters of the Gulf of Mexico.[17] These are deep water areas designated by the Environmental Protection Agency ("EPA") as approved areas for disposing of dredged materials. Aside from the concerns of the scientific community over the disturbance of sensitive deep-water habitats, [18] the deep-water disposal of dredged material is a waste of a valuable resource that could be used to rebuild Louisiana's coast.
It appears that the federal government is coming to a realization that it is wasting this potentially vital resource. In a recent joint guidance report by the EPA and the Corps, those agencies stated that,
 [m]uch of the several hundred million cubic yards of sediment dredged each year from U.S. ports, harbors, and waterways could be used in a beneficial manner, such as for habitat restoration and creation, beach nourishment, aquaculture, forestry, agriculture, miner reclamation, and industrial and commercial development. Yet most of this dredged material is instead disposed of in open water, confined disposal facilities, and upland disposal facilities.[19]
Although the agencies are quick to caution that their recent musings on the possible uses of dredged material are "intended solely as guidance"[20] and are thus not enforceable federal policies, their conclusions support the enforcement of Louisiana's own coastal use guidelines that require, to the maximum extent practicable, the beneficial use of dredged materials in the coastal zone. Indeed, though the report is "guidance," the Corps has an existing standard that supports the beneficial use of dredged material.[21]
The major obstacle to the beneficial use of dredged material appears to be a matter of cost.[22] However, the excuse that the cost of an operation is too high and thus need not be complied with in order for a project to be considered consistent with a state's coastal program is unacceptable. The CZMA clearly demonstrates that lack of funding is not an excuse for noncompliance with a *Page 5 
federally-approved coastal management plan.[23] In addition15 C.F.R. 930.32(a)(2) clearly states that Congress' intent with the law that supports these regulations was to cause federal agencies to adhere to the consistency requirements of the states. Under this charge, the federal government requires its agencies to either consider the increased expenses of requirements such as beneficial use when requesting funding for projects or to adjust their funding requests once they become aware of the increased costs of consistency.
To the extent that beneficial use of dredged materials exceeds the "least costly" standard, the excess costs may be covered either by federal/non-federal cost sharing or may be solely borne by a non-federal entity.[24] The joint EPA/Corps report notes that the costs of beneficial use projects that "do not contribute to USACE navigation, ecosystem restoration, or flood and storm damage reduction missions" are to be borne solely by the non-federal project sponsor.[25] However, as has been documented countless times in the academic literature, coastal restoration and protection (the probable use of Louisiana's dredged materials) is essential to support both ecosystem restoration[26] and flood and storm damage reduction.[27] Thus, it is the opinion of this Office that, should the federal government enter into beneficial use projects with the State to restore Louisiana's coast, the excess costs of such projects cannot, under federal law, be solely borne by the State of Louisiana.
Thus, with regard to your question related to beneficial use, it is the opinion of this Office that Louisiana cannot force the federal government to beneficially use *Page 6 
dredged material through legal concepts under Louisiana's property and mineral law regimes. However, it is further the opinion of this Office that federal projects that implicate Louisiana's coastal zone that do not contain provisions to beneficially use dredged materials to offset coastal land loss are — in many cases — not consistent with the State's approved CMP. In such instances, the State can use its authority under the CZMA to require that the federal government beneficially use dredge material for coastal restoration purposes. It is beyond the purview of this Office to make policy decisions on whether federal projects should be formally objected to for the lack of consistency identified above. This is a matter of policy that is reserved for other State executive officials.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By:__________________________
 By: RYAN M. SEIDEMANN
 Assistant Attorney General
 JDC/RMS/tp *Page 1 
Opinion Number 05-0222
December 5, 2005.
90-A-2 PUBLIC FUNDS — Loan Pledge or Grants
Art. 7, Sect. 14 of La.Const.;
Art. 9, Sect. 5 of La.Const.
LSA-R.S. 30:121 et seq.; LSA-R.S. 39:1703
La, Const, Art. VII, Sec. 14 prohibits the State Mineral Board from donating state owned property it administers, i.e. sand and gravel, to a parish for public road repair and/or construction within the parish and to which the state has no legal responsibility or obligation. The State Mineral Board may sell property which it administers to a parish but such a sale must be for fair and adequate value or a benefit commensurate with the value of the property must be received. Such a transfer may be made pursuant to LSA-R.S. 39:1703 which allows for a property transfer between public entities without the necessity of public bid or advertisement.
Mr. Isaac Jackson, Jr., General Counsel
Department of Natural Resources
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396
Dear Mr. Jackson:
Reference is made to your request, on behalf of the State of Louisiana, Department of Natural Resources ("DNR"), for an Attorney General's opinion regarding whether the State Mineral Board ("Board") may enter into a cooperative endeavor agreement with a parish Police Jury wherein the parish would obtain the exclusive right to remove sand and gravel from state-owned property without charge and for which the parish will use solely for the purpose for public road repair and/or construction within the parish. If authorized and, if the agreement contains a provision for the state to receive a payment based on the quantity of sand and gravel removed, you ask whether such an agreement would be considered a lease or operating agreement and, if so, are the procedures set forth in LSA-R.S. 30:121, et seq. and/or LSA-R.S. 30:209, et seq., applicable and necessary.
Your letter indicates that pursuant to La.Const. Art. 9, Sec. 5, "no conveyance, lease, royalty agreement, or unitization agreement involving minerals or mineral rights owned by the state shall be confected without prior public notice or public bidding as shall be provided by law." You also state that the State Mineral Board administers the state proprietary interest in minerals and has the authority, subject to public notice, to lease for the development and production of minerals, oil, and gas any land owned by the state. You further state that pursuant to LSA-R.S. 30:209
the State Mineral Board may enter into an operating agreement and receive a share of the revenues from the production of oil, gas, and other minerals. Specifically, the question to be addressed by this office is whether or not the State Mineral Board may donate sand and/or gravel to a parish for use on parish roads or if a payment is required whether the agreement is considered a lease or operating agreement for public notice and public bid purposes.
As your letter indicates, you are aware that the question presented by your request must be addressed in light of the provisions of La.Const. (1974) Art. VII, Sec. 14, which contains the constitutional standard for the lawful use of public funds and *Page 2 
property. La.Const. Art. VII, Sec. 14(A) generally prohibits the state and its political subdivisions from loaning, pledging or donating public funds, assets or property to persons, associations or corporations, public or private. Atty Gen. Op. Nos. 04-0052; 91-313.
Historically, the Attorney General has followed the Louisiana Supreme Court's interpretation of La.Const. Art. VII, Sec. 14, as set forth inCity of Port Allen v.
 Louisiana Mun. Risk, 439 So.2d 399 (La. 1983), wherein the Court states: ". . .this Section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." The previous opinions of this office recognize that the requirement of a legal obligation to expend public funds or use public property is the threshold predicate for the constitutionality of an expenditure or use but is not the only predicate. The expenditure or transfer of property must also be for a public purpose and create a public benefit proportionate to its cost. Atty Gen. Op. Nos. 90-63, 90-651, 92-722, 01-0389 and 02-0125. In City of Port Allen, supra, the Court stated: ". . .even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations or to individuals merely for a public purpose."
Paragraph (C) of Section 14 authorizes public entities to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations or individuals. However, Paragraph (C) supplements the prohibition against donations in Section 14(A). It does not create an exemption or exception from the general constitutional prohibition. All such cooperative endeavors authorized by Section 14(C), must also meet the general standard for the non-gratuitous alienation of public funds or property established by Section 14(A).
Based on the information provided, it is our understanding that the proposed agreement would have the Board donate state property, i.e. sand and gravel, to a parish for use on parish roads and for which the state has no obligation or responsibility. This office is not aware of, nor did our research reveal, any provision of law which would obligate or authorize the Board to engage in the repair and/or construction of parish roads. As such, Louisiana Constitution Article VII, Sec. 14 prohibits the Board from donating its property for public road repair/construction within the parish and to which neither the
Board nor the state has an obligation or responsibility even if such a donation would serve a public purpose of providing improved roads within the parish. Also see Atty. Gen. Op. No. 00-57, (consolidated gravity drainage district could not use public funds entrusted to it for drainage purposes for economic development) and Atty. Gen. Op. No. 97-408, (school board could not lease property it owned for a nominal rent, even in the interest of economic development).
Should the State Mineral Board elect to enter into an agreement wherein fair and adequate value is paid by the parish for the transfer of the sand and/or gravel or a *Page 3 
benefit is received by the Board that is commensurate with the value of the transferred property then such an agreement would be authorized and would not require public bid and advertisement. LSA-R.S. 39:1703 allows any public procurement unit (Board) to sell to or acquire from any other public procurement unit (parish) materials, supplies and equipment without the necessity of public bid and advertisement. See Atty. Gen. Op. Nos. 00-55, 95-166 and 91-1. In light of this statutory provision whether such an agreement is considered a lease or operating agreement is irrelevant for public notice purposes.
It is therefore the opinion of this office that State Mineral Board may not donate or otherwise give away property that it owns, i.e. sand and/or gravel, to a parish for use by the parish on parish roads to which the state has no responsibility or obligation. However, the Board may enter into a cooperative purchasing agreement pursuant to LSA-R.S. 39:1703
wherein the Board may transfer or sell the sand and/or gravel to the parish at a fair and adequate value or for a benefit that is commensurate with value of the property transferred without the necessity of public bid or advertisement.
We trust this adequately responds to your request.
 Yours very truly,
 CHARLES C. FOTI, JR.
 Attorney General
 BY:__________________________
 RICHARD L. MCGIMSEY
 Assistant Attorney General
 CCR/RLM/dam
[1] This proposition is also supported by La.R.S. 31:4, which applies the provisions of the Louisiana Mineral Code to "rights to explore for or mine or remove from land the soil itself, gravel, shells, subterraneanwater, or other substances occurring naturally in or as a part of thesoil or geological formations on or underlying the land" [emphasis added]. These solid minerals would not have been included in the coverage of the Mineral Code had the Legislature not intended for such to be considered minerals.
[2] The proposition that dredged materials are the property of the State and have intrinsic value is also supported by Ronald AdamsContractor, Inc. v. State ex rel. Dept. of Wildlife Fisheries, 2000-1490 (La.App. 1 Cir. 9/28/01), 807 So.2d 881.
[3] "The United States Army Corps of Engineers (Corps), the agency primarily responsible for maintaining federally designated navigation channels. . ." Gregory A. Bibler, Contaminated Sediments: Are ThereAlternatuves to Superfund?, 18 NAT. RES. ENV'T. 56 (Fall 2003); seealso, Robert P. Fowler, Jeffrey H. Wood, Thomas L. Casey, III,Maintaining the Navigability of America's Inland Waterways, 21 NAT. RES. ENV'T 16 (Fall 2006).
[4] Lisa C. Schiavinato and James G. Wilkins, BENEFICIAL USE OF DREDGED MATERIAL: TO WHAT EXTENT DO STATES HAVE A VOICE? GACRDP Technical Report Series (Louisiana Sea Grant Legal Program/Louisiana Governor's Applied Coastal Research and Development Program 2004).
[5] 16 U.S.C. 1451, et seq.
[6] La.R.S. 49:214.21, et seq.
[7] 16 U.S.C. 1452(1).
[8] 16 U.S.C. 1451(a).
[9] 16 U.S.C. 1451(i)-(m). See also, Carolyn R. Langford, Marcelle S. Morel, James G. Wilkins, Ryan M. Seidemann, The Mouse that Roared: CanLouisiana's Coastal Zone Management Consistency Authority Play a Role inCoastal Restoration and Protection?, 20 TUL. ENVTL. L. J. 97 (2006).
[10] 16 U.S.C. 1455.
[11] 16 U.S.C. 1455(b) 1456.
[12] Langford et al., supra, at 116.
[13] 16 U.S.C. 1456.
[14] 16 U.S.C. 1456(c)(1)(A) (c)(3).
[15] 15 C.F.R. 930.32(a)(1).
[16] LAC 43:I.707(B) states that,
 [s]poil shall be used beneficially to the maximum extent practicable to improve productivity or create new habitat, reduce or compensate for environmental damage done by dredging activities, or prevent environmental damage.
(emphasis added). Further, LAC 43:I.707(G) states that "[t]he alienation of state-owned property shall not result from spoil deposition activities without the consent of the Department of Natural Resources." The latter consistency requirement appears to restrict the wholesale disposal of dredge material that derives from State property.
[17] Schiavinato Wilkins, supra.
[18] See e.g., Tony Koslow, THE SILENT DEEP: THE DISCOVERY, ECOLOGY, AND CONSERVATION OF THE DEEP SEA (Univ. of Chigago 2007).
[19] U.S. EPA and U.S. Army Corps of Engineers, THE ROLE OF THE FEDERAL STANDARD IN THE BENEFICIAL USE OF DREDGED MATERIAL FROM U.S. ARMY CORPS OF ENGINEERS NEW AND MAINTENANCE NAVIGATION PROJECTS: BENEFICIAL USES OF DREDGED MATERIALS, EPA842-B-07-002, ii (EPA/Corps 2007).
[20] Id.
[21] 33 C.F.R. 335.7; 53 FR 14902. This standard requires that the Corps identify the "least costly dredged material disposal or placement alternative . . . that is consistent with sound engineering practices and meets all federal environmental requirements. . ." EPA/Corps, supra, at 2.
[22] Id. at ii.
[23] 15 C.F.R. 930.32(a)(3) states that,
 Federal agencies shall not use a general claim of a lack of funding or insufficient appropriated funds or failure to include the cost of being fully consistent in Federal budget and planning processes as a basis for being consistent to the maximum extent practicable with an enforceable policy of a management program. The only circumstance where a Federal agency may rely on a lack of funding as a limitation on being fully consistent with an enforceable policy is the Presidential exemption described in section 307(c)(1)(B) of the Act (16 USC 1456(c)(1)(B)). In cases where the cost of being consistent with the enforceable policies of a management program was not included in the Federal agency's budget and planning processes, the Federal agency should determine the amount of funds needed and seek additional federal funds. Federal agencies should include the cost of being fully consistent with the enforceable policies of management programs in their budget and planning processes, to the same extent that a Federal agency would plan for the cost of complying with other federal requirements.
See also, Schiavinato Wilkins, supra at 20.
[24] Id. at 4.
[25] Id.
[26] See generally, Ryan M. Seidemann Catherine D. Susman, WetlandsConservation in Louisiana: Voluntary Incentives and Other Alternatives, 17 J. ENVTL. L. LIT. 441 (2002).
[27] See generally, Ryan M. Seidemann, Louisiana Wetlands and WaterLaw: Recent Jurisprudence and Post-Katrina and Rita Imperatives, 51 LOY. L.REV. 861 (2006).